(169 App. Div. 519)

### In re O'BRIEN.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

1. ATTORNEY AND CLIENT ⬥42—DISBARMENT—GROUNDS.

Respondent, an attorney, being consulted by a widow and her two daughters as to the construction of an apartment house with money belonging to the husband's estate, applied to a trust company for a building loan. The trust company agreed to make such loan on condition that the property be transferred to a corporation, which would execute the mortgage. The title being in the two daughters, subject to the mother's dower interest and a life estate in a deceased brother's share, respondent made application to the Supreme Court for the sale of the real estate belonging to one of the daughters, who was an infant. To procure such consent he induced his clients to swear to false statements prepared by him at the hearing before the referee, representing that the daughter, who was of age, was willing to purchase her sister's interest for a certain amount to be paid in 90 days, and that unless the property be partitioned the elder daughter would bring suit therefor. Because of the false statements so made, the Supreme Court was induced to order a sale of the infant's real estate to her sister, which being consummated, the elder sister and her mother joined in conveying to a corporation formed by respondent, whereby the loan from the trust company was obtained. The infant received

nothing for her interest, except stock in the corporation organized. Because of delay on the part of the contractor, the property was rendered unproductive, and when the building was completed, respondent's clients were penniless. *Held*, that respondent had been guilty of misconduct in procuring the Supreme Court to consent to the sale of the minor's interest, warranting suspension.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. ☞42.]

2. INFANTS ☞39—SALE OF INFANT'S REAL ESTATE—DUTY OF REFEREE.

In a proceeding for the sale of an infant's real estate, the referee appointed by the Supreme Court must have the witnesses interrogated in his presence, and make sure that they understand what they are swearing to; his duty not being fully performed by merely perfunctory acts.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 85–89; Dec. Dig. ☞39.]

Application for disbarment of John Patrick O'Brien. On report of the official referee upon charges preferred. Respondent suspended for two years.

See, also, 165 App. Div. 991, 149 N. Y. Supp. 1100.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (Jabish Holmes, of New York City, of counsel), for petitioner.

George Gordon Battle, of New York City, for respondent.

PER CURIAM. The respondent, a young man admitted to the bar in 1908, stands charged by the Association of the Bar of the City of New York, and has been found guilty by the official referee, of gross unprofessional conduct with regard to the matters hereinafter stated, as to which there is no substantial question of fact.

[1] In 1905 one John J. Coffey died intestate, leaving him surviving a widow and three children, the eldest of whom died in 1908, intestate and unmarried. Mrs. Coffey was the administratrix of the estate. At his death Coffey owned two parcels of real estate—one at the corner of Eighth avenue and Seventeenth street, in the city of New York, which he had bought for $49,000, and upon which there was a mortgage of $2,700; the other at the corner of Ninth avenue and Twenty-Fifth street, in the city of New York, which had been purchased for $30,000 and was incumbered by a mortgage for $15,000. These properties produced at least sufficient income to carry themselves and perhaps something over. In February, 1911, respondent was introduced to Mrs. Coffey by a man named Baker. It appeared that Mrs. Coffey, Baker, and an architect named Serracino had determined to erect a six-story apartment house on the Eighteenth street lot. This scheme, however, fell through, owing to Baker's failure to secure a building loan. Mrs. Coffey then consulted with respondent, and as a result of that conference she determined to tear down the three-story buildings on the Eighth avenue site and to erect thereon an apartment house. In order to finance this operation respondent applied to the Title Guarantee & Trust Company

for a building loan of $50,000. This application was accepted, and the Title Company agreed to make the loan upon condition that the property should be transferred to a corporation, which should execute the mortgage. The title to the property, as respondent ascertained upon examination was in Julia and Abbeline Coffey, daughters of John J. Coffey, subject to the dower right of their mother and her life estate in the deceased brother's share. Julia Coffey was then 23 years of age, and Abbeline was an infant 17 years of age.

The first thing to be done was to obtain the consent of the Supreme Court to the sale of Abbeline's interest. To this end respondent instituted the usual proceeding for the sale of an infant's real estate. He appears to have been at the time quite uninformed as to the procedure in such cases and consulted freely with persons in the employ of the Title Company. In the petition in this proceeding, which was drawn by respondent and verified by both Abbeline Coffey and her mother, as her guardian in socage, it was alleged, among other things that the Eighth avenue property paid only the carrying charges; that Julia Coffey desired that the property be partitioned; that, unless the court directed a sale of the infant's interest, Julia Coffey would be obliged to commence suit for partition; and that the opportunity offered itself to sell the infant's share to Julia Coffey for $9,000. Upon the presentation of the petition a referee was appointed to hear the allegations and proof and report to the court.

The testimony to be used by the referee was prepared by respondent in advance of the hearing in the form of questions and answers. In such testimony Mrs. Coffey was caused to swear that the income from the property about equaled the expenses; that the highest price offered for the property was $45,000; that threats had been made by Julia Coffey to bring about a forced sale in partition, in case a satisfactory private sale was not made shortly; that the value of the infant's interest in the property was $9,000; that Julia Coffey had offered to purchase said interest for $9,000, to be paid, $1,000 on signing the contract, and the balance of $8,000 within 90 days on the completion of the sale. Julia Coffey, in the testimony prepared for her by the respondent, was made to testify to the same general effect. This testimony, in many essential particulars, was false and misleading. Julia Coffey entertained no idea of commencing an action for partition, nor did she desire to purchase her sister's share in the property, and she had no money wherewith to purchase it. In fact, it was never intended by any of the parties, including the respondent, that Julia should become the purchaser of Abbeline's interest. There is no doubt that the testimony was read over to the parties by the referee; but it is equally clear that they scarcely understood what they were swearing to, and relied implicitly upon respondent.

[2] The report of the referee was that the application should be granted. In passing, it may be said that the referee is not free from blame in permitting the testimony to be prepared in advance, instead of having the witnesses interrogated in his presence, and making sure that they fully understood what they were swearing to. In a proceeding for the sale of an infant's real estate, the referee is appointed to

inform the conscience of the court, and his duty is not fulfilled when he acts merely perfunctorily.

Following the report of the referee, the respondent prepared a report, which was signed by Mrs. Coffey, as special guardian for her infant daughter, in which she stated that she had entered into an agreement with her daughter, Julia Coffey, for a sale to her of the infant's share in the real estate for $9,000. A copy of the alleged agreement was annexed to the report. Thereupon an order was prepared by respondent, and entered, directing the sale of the infant's interest to Julia Coffey upon the terms proposed. It was further directed that the balance remaining after paying attorney's fees, referee's fees, dower interest, and life interest "be paid into court for the benefit of said Abheline Coffey, the infant, by paying the same to the city chamberlain of the city of New York, or to the general guardian of the said infant, if appointed within 10 days from the closing of title to the aforesaid premises, upon the filing of a sufficient bond by such general guardian in double the amount of said balance, in the surrogate's office of New York county for that purpose and that upon the paying over of said balance in either manner, as aforesaid, the said special guardian herein be discharged of all liability, and her bond herein as such be canceled." The bond of the special guardian in that proceeding had been $12,500, obtained by respondent from a surety company.

In July, 1911, a similar proceeding was conducted with reference to the Ninth avenue property. There were similar statements in the petition, except that the value of the infant's interest was fixed at $5,000. Substantially similar and similarly false testimony was prepared by respondent in question and answer form, in advance of the reference, a favorable report was obtained from the referee, and a similar report made by the special guardian, whose bond, executed by the same surety company, was in the amount of $7,000, and a similar order was made directing the sale and disposition of the proceeds.

In July, 1911, the Coffey Realty Company was incorporated by the respondent and two clerks in his office. The capital stock was fixed at $30,000. The conveyance of the infant's share in both parcels of real estate was made by Mrs. Coffey, as special guardian, to Julia Coffey. These deeds were prepared by respondent and delivered, and the title closed in his office. The deed recited the consideration recited in the orders authorizing the sale, and they were subsequently recorded at respondent's request. No money whatever passed between Mrs. Coffey and her daughter Julia, nor had it ever been intended at any stage in the proceedings that it should. Having thus acquired her sister's interest, Julia Coffey joined with her mother in deeds of the properties to the Coffey Realty Company. The capital stock of the corporation was then divided up and issued as follows: $10,600, par value, to Catherine D. Coffey, the mother; $9,700, par value, to Julia Coffey; and a like amount to Catherine D. Coffey, as guardian of Abbeline Coffey.

The title to the properties having now been vested in a corporation, the matter of closing the loan with Title Company was taken up, as

well as the matter of a building contract. About a year before this time the respondent had organized, for a friend, a contracting company known as the St. Ann's Building Company. The principal owner of this company was introduced by respondent to Mrs. Coffey, with the result that the company received a building contract. The St. Ann's Building Company proved to be an irresponsible concern, and failed to fulfill its contract, with the result that the property was rendered unproductive for about a year. Considerable money was borrowed upon the Ninth avenue property to finance the erection of the building on the Eighth avenue plot, and considerable trouble was experienced with lienors, so that finally, when the building had been completed and was ready for occupancy, the Coffeys, instead of having a larger income than they had had before they had entered upon the scheme, found themselves absolutely penniless and acting as janitors of the building, paying whatever rent was received to the holders of one of the subordinate mortgages.

In the matter of the $50,000 loan from the Title Company, the respondent represented to Mrs. Coffey that a Mr. Lord, who had assisted the St. Ann's Building Company in the effort to carry out its contract, was entitled to a commission of $500 for placing the mortgage, of which he paid $250 to respondent. The respondent claims that this sum was paid to him by direction of Mrs. Coffey. This she denies; but, whether she directed the payment of the money or not, there appears to have been no justification for the representation that Lord was entitled to a commission for placing the loan. It appears to be a fact well known to respondent that, if he had properly protected the interests of his clients, the loan could have been arranged for without the necessity for employing the services of an intermediary. This was judicially held by the City Court in an action between respondent and Mrs. Coffey and the Coffey Realty Company, wherein respondent sued for the value of his professional services, and the court allowed by way of counterclaim the whole sum of $500.

When the charges against respondent were brought to the attention of the Association of the Bar, a letter was written to respondent, asking an explanation of his conduct. In reply he asserted the regularity of the proceeding for the sale of the infant's real estate, and specifically asserted that the considerations named in the alleged contracts of sale had been paid to the special guardian "in cash." This amazing misstatement is sought to be explained by respondent by the allegation that he considered stock in the Coffey Realty Company as the same thing as cash.

While it is impossible, in face of the established facts, to maintain that the statements put into the mouth of Mrs. Coffey and her daughter Julia in the petition and in the prepared testimony presented to the referee were true, the respondent insists that he believed them to be true, and rested that belief on Mrs. Coffey's statements to him. This Mrs. Coffey denies, and all the probabilities of the case support her story in this particular. At least respondent was most culpably negligent in not informing himself upon the subject before becoming the active party in an imposition upon the court. It is idle for respondent, speaking through his counsel, to villify Mrs. Coffey and seek to throw

all the blame upon her. It is manifest that she and her daughters relied absolutely upon respondent, and signed everything he instructed them to sign. At every step he was the active moving party, who devised and carried through the whole scheme in its every detail.

It is sought to excuse the respondent's actions upon the ground that he was a very young man, entirely unfamiliar with proceedings for the sale of infant's real estate, and that by some strange mental perversion he sincerely considered that stock in a realty corporation was the equivalent of cash. It is also claimed for him, as if it was unusually meritorious, that he handled $64,618.05 of his client's money in the course of the building operations, and did not embezzle or convert to his own use any part of it. These excuses seem to us to be entirely inadequate. The Supreme Court is, by law, the especial guardian of the interests of infants. In dealing with their property it is compelled to rely, for the facts upon which to found its judgment, upon the officers of the court, to wit, its attorneys and referees. From every attorney and referee engaged in a proceeding for the sale of an infant's real estate the court expects, and is entitled to rely upon, the utmost frankness and good faith. This confidence the respondent deliberately betrayed, by causing his clients to make false statements upon vitally material questions. Such palpable and inexcusable breach of duty to the court plainly constitutes professional misconduct and cannot be overlooked.

The respondent is suspended from practice for two years, with leave to apply at the expiration of that term for reinstatement upon compliance with the conditions to be inserted in the order to be entered herein. Settle order on notice.